865 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ALGOMA STEEL CORPORATION, LTD., Plaintiff-Appellant,
v.
COMMERCIAL WIRE ROPE AND SUPPLY, Defendant-Appellee,
Chesapeake & Ohio Railroad Company, Defendant.
 No. 87-1758.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1988.
 
 Before KEITH, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Dewey Burpo, an employee of Portec Company (Portec), was injured when the cable sling he was using to unload freight from a gondola car snapped, dropping 60,000 pounds of steel on his hand. A jury found that Algoma Steel Company (Algoma) had negligently loaded the steel and awarded Burpo damages. Algoma then sought contribution from Commercial Wire Rope & Supply Company (Commercial), alleging that Commercial was negligent in manufacturing the cable Burpo used, and in failing to provide proper instructions and warnings. The District Court granted Commercial's motion for a directed verdict, holding that Algoma failed to adduce sufficient evidence identifying the seller or supplier of the allegedly defective cable. We affirm.
 
 
 2
 Under Michigan law--which applies in this diversity action--a directed verdict is proper when the jury's verdict "would be based not upon reasonable inference but upon conjecture." Central Soya Co. v. Rose, 135 Mich.App. 180, 183 (1984). In the present case, the lack of evidence establishing the source of the cable used by Burpo would have forced the jury to rely upon conjecture.
 
 
 3
 The allegedly defective cable disappeared some time after the accident. All witnesses denied any knowledge of the cable's source. According to the records of both Portec and Commercial, all of the cable slings sold by Commercial to Portec were either 5/8" or 1/2" in diameter and composed of six strands. According to Commercial's records, the company sold 5/8" cable slings 15 feet long, and 1/2" slings 15 or 16 feet long. Commercial's cable bears a purple "Bethlehem" mark. The witnesses' descriptions of the cable varied widely, and none of the eye-witness descriptions were consistent with Commercial's specifications.
 
 
 4
 Dewey Burpo, the victim, recalled that the cable had "close to ten strands." He was uncertain about its length, but he remembered that the cable was longer than the steel, which was seventeen feet long. Burpo made an "educated guess" the cable was 5/8" thick. He did not see a purple "Bethlehem" mark on the cable.
 
 
 5
 Donald Little, who worked with Burpo and selected the fateful cable, put the cable's length at 15 to 20 feet. He repeatedly stated the cable was 3/4" to 1"' in diameter. According to Little, the cable was in poor shape: "dirty" and "kinked."
 
 
 6
 Portec employee Elvis Matheny learned of the accident the following morning, when the broken cable was placed in his possession. Matheny retained the cable for some time; it eventually "disappeared" from its hanging place. He described the cable as 3/4" thick, about ten feet long, and "fairly new."
 
 
 7
 Wayne Ruczynski served as Portec's general accounting supervisor from 1979-1984. He had no association with Portec at the time of Burpo's injury in 1977. In 1982, Ruczynski reviewed Portec's records in preparation for a deposition in this case. He testified that for 1976 and 1977, the only cable orders he located were for Commercial products. Ruczynski found no orders for 3/4" cable or for 20 foot cable slings. He conceded that he did not check the receiving logs to determine whether cable had been received from any other sources. Moreover, his records search covered only 1976 and 1977, but there was no evidence indicating the cable used by Burpo necessarily was purchased in either of those years.
 
 
 8
 At most, the testimony at trial showed that in 1976 and 1977, Portec bought its 1/2" and 5/8" cable from Commercial. It would be pure speculation to conclude the allegedly defective cable was purchased in either of those years. Some witnesses recalled that it was "fairly new," but others described the cable as old and dirty. Further, none of the witnesses' descriptions of the cable used by Burpo matched Commercial's specifications. A Commercial cable would have been 1/2" or 5/8"; 15 or 16 feet long; and made of six strands. Both Burpo and Little described a significantly longer cable. Little estimated it was 20 feet, and Burpo recalled it was longer than the 17 foot steel he was unloading. The victim described a ten strand cable. While Burpo guessed the cable was 5/8" thick, other witnesses expressed certainty that it was substantially thicker--3/4" or one inch. Finally, none of the witnesses had any knowledge of the cable's source. Numerous cable slings were hanging and lying about the facility, and a second cable used by Burpo and Little was not Portec property at all: Little obtained it from the railroad car.
 
 
 9
 This is not a case where a jury could find for Algoma if it believed some witnesses and not others. Instead, the jury would have to believe only part of one witness' testimony, and only part of another's, without any rational basis for determining which portion of the witness' description to accept.
 
 
 10
 Because Algoma failed to present evidence that Commercial was the source of the allegedly defective cable, the District Court properly granted the directed verdict. Accordingly, the judgment of the District Court is AFFIRMED.