Chad AUSTIN, Dawn Austin, and Citizens Insurance Company of America, Subrogee of Chad Austin, Dawn Austin, and Recrest, Inc., Plaintiffs,

v.

MITSUBISHI ELECTRONICS AMERICA, INC., [Former caption: Mitsubishi Electric Sales America, a/k/a MESA, an Illinois corporation], Defendant.

Civil No. 95–76277.

United States District Court,
E.D. Michigan,
Southern Division.

April 28, 1997.

Gary R. Chopp, Morrison, Mahoney & Miller, Southfield, MI, for Chad Austin, Dawn Austin, Citizens Ins. Co. of America.

John E. Scott, Edwin J. Lukas, Dickinson, Wright, Moon, VanDusen & Freeman, Bloomfield Hills, MI, for Mitsubishi Electric Sales America, Inc.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

GILMORE, District Judge.

#### I.

Magistrate Judge Virginia M. Morgan filed her Report and Recommendation in the above-captioned case on September 16, 1996, recommending that the Court grant the Defendant's Motion for Summary Judgment. Plaintiffs, Chad Austin, Dawn Austin and Citizens Insurance Company of America (hereinafter "Plaintiffs") have not filed any objections to that Report and Recommendation. The Court has considered carefully the Report and Recommendation. Moreover, the Court has reviewed all of the pleadings, reports and other papers filed in the instant case. Accordingly, this Court **ADOPTS THE REPORT AND RECOMMENDATION** as the findings and conclusions of the Court, with the following explanation and clarification of the Magistrate Judge's findings.

#### II.

The Plaintiffs' amended complaint contained two counts. The first alleged that Mitsubishi Electronics America, Inc. (hereinafter "Defendant") was negligent in the manufacture and design of its product and, among other allegations, in its failure to warn purchasers of the dangers inherent in the use of the television. The second count alleged that the Defendant made expressed and implied warranties regarding the quality and fitness of the product and that such warranties were breached resulting in a loss to the Plaintiffs. The Magistrate Judge concluded that Plaintiffs' allegations did not survive Defendant's Motion For Summary Judgment.

#### A. Negligence Claim

1. Manufacturing Defect

As the Magistrate Judge noted, under Michigan law, Plaintiffs must show in a

product liability case that the product was defective, that the defect was attributable to the manufacturer, here the Defendant, and a causal connection existed between the defect and the injury or damage to the Plaintiffs. *Piercefield v. Remington Arms Company, Inc*, 375 Mich. 85, 98–99, 133 N.W.2d 129 (1965). Here, as the Magistrate Judge indicated, Plaintiffs were not able to identify any specific defects in the product. Additionally, even their expert witness was not able to identify a specific ignition source within the television itself. (B. Sadler Deposition, 89, 98–99.)

Plaintiffs argued relying on *Garmo v. General Motors Corporation*, 45 Mich.App. 703, 708, 207 N.W.2d 146 (1973) that circumstantial evidence can be used to conclude a product is defective even without a specific showing of a demonstrable defect. Therefore, they argued that summary judgment is inappropriate here because reasonable inferences can be drawn from circumstantial evidence although specific demonstrable defects have not been proven. The Plaintiffs also cited *Michigan Mutual Insurance Co. v. RCA Corporation*, (Mich.App. Docket No. 102832, issued April 19, 1990), an unpublished opinion, as authority. [Although the Magistrate Judge's Report stated that the Plaintiffs did not attach a copy to their pleadings, the Plaintiffs did in fact attach a copy as Exhibit A in their Sur–Reply to Defendant's Motion for Summary Judgment.] This case involved damages resulting from a fire in a residence allegedly caused by a defective television set. A fire investigator concluded that "[b]ecause of the balling of the electrical wires, the burn patterns, the severity of damage to the television, and the elimination of other causes ... the fire originated in the television set ..." *Id.*, at 3. The trial court denied defendant's first motion for a directed verdict and found that:

Although Mr. Buckley [fire investigator] never expressed an opinion as to the ultimate issue as to whether the television set was defective, a reasonable inference could be drawn from his testimony that the set was not reasonably fit for the purpose and use intended by the manufacturer ... Specifically, one could infer from Mr. Buckley's testimony that the fire originat-

ed in the television set due to a short created by a defective wire or conductor. *Id.*

The Michigan Appellate Court agreed and held that "[a] product can be proved defective by drawing reasonable inferences from circumstantial evidence without specifically proving the existence of a demonstrable defect." *Id.*, at 4. The Court further stated that the "[p]laintiffs presented sufficient evidence to raise a reasonable probability that the television set was defective and that the defect caused the fire in question." *Id.*

However, this case may be distinguished from the instant case in that no experts, even the Plaintiffs's own experts, were able to present any circumstantial evidence that the fire originated in the television set. Thus, no reasonable inferences could be drawn to conclude that the fire originated in the television set, and therefore there was a reasonable probability that the television set was defective.

The Magistrate Judge's Report and Recommendation also discusses *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372 (1982) and *Fisher v. Kawasaki Heavy Industries, Ltd.*, 854 F.Supp. 467 (E.D.Mich. 1994) as authority that establishing a product defect from circumstantial evidence without identifying a specific cause is no longer the rule in Michigan. However, both these cases involved product liability actions based on the theory of negligent design, not negligent manufacturer, and will be discussed in a later section.

■ Finally, Plaintiffs cannot rely on the doctrine of res ipsa loquitur to support an inference of negligence and survive Defendant's Motion For Summary Judgment. As the Magistrate Judge's Report stated, the Plaintiffs were not able to satisfy the four conditions required to avail themselves of this doctrine. See *Jones v. Porretta*, 428 Mich. 132, 150–151, 405 N.W.2d 863 (1987). Although a fire damaging the television set and surrounding area does not occur in the absence of someone's negligence, the television set had been in the exclusive control of the Plaintiffs for approximately two years; the possibility of Plaintiffs's own contribution

or action resulting in the fire could not be eliminated, and the true explanation for the fire is not more readily accessible to the Defendant then to the Plaintiffs.

In conclusion, as to the negligence claim alleging a manufacturing defect, the Defendant is entitled to summary judgment since the Plaintiffs were unable to identify any specific defect nor present any circumstantial evidence that would support a reasonable inference of a defect.

### 2. Negligent Design Defect

■ As Magistrate Judge Morgan noted, in order to establish liability of a designer of products, a plaintiff must first establish the four elements of a negligence cause of action: duty, breach, a causal connection between the breach and injuries or damages. Further, to establish a prima facie case of design defect, a plaintiff must show "through direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer or seller, . . . evidence concerning both the magnitude of the risk involved and the reasonableness of the alternative design". *Fisher*, 854 F.Supp. at 468–469: see also *Owens*, 414 Mich. at 432, 326 N.W.2d 372.

■ Here, as the Magistrate Judge indicated, the Plaintiffs did not offer direct or circumstantial evidence of a design defect attributable to the manufacturer nor any evidence concerning the magnitude of the risks involved in the use of the television set or any proposed alternative designs to eliminate any such defect. In addition, ". . . the magnitude of the risk component of Michigan's rule requires a showing that the . . . design chosen is defective because it failed to eliminate the unreasonable risk of injury that was foreseeable". *Snider v. Stanley Works*, 28 F.3d 1214, 1994 WL 326005 (6th Cir.Mich. 1994) (unpublished decision). Therefore, since the Plaintiffs have not produced sufficient evidence concerning these factors, Plaintiffs have not presented a prima facie case, and Defendant is entitled to summary judgment on the claim for defective design.

### 3. Failure to Warn

■ Plaintiffs have also alleged that the Defendant was guilty of negligence in its failure to warn the purchaser, installer, and/or other foreseeable users of the dangers inherent in the use of the television. However, as the Magistrate Judge noted in detailing the elements of a failure to warn claim, even if the Defendants had actual or constructive knowledge of the possibility that a turned off television set could become the ignition source of a residential fire, the Defendant furnished purchasers, here the Austins, with an Owners Manual. This Manual contained warning language regarding the use of the television set to prevent fire or shock hazard, including the location of the television set and plugging the television set into an overloaded wall outlet or extension cord. (Defendant's Brief in Support of Motion For Summary Judgment, Exhibit Q.) In addition, Plaintiffs have not shown that the warnings were inadequate, that other claims or lawsuits have been filed alleging that this particular model caused fires or that the lack of an alternative warning proximately caused the fire. For these reasons, Defendant is entitled to summary judgment on this claim.

### B. *Breach of Warranty Claims*

■ Plaintiffs alleged that Defendant breached expressed and implied warranties of merchantability and fitness for the television set's ordinary and/or particular purpose. The facts indicated that the Plaintiffs received a limited warranty from the Defendant. The warranty expressly limited the implied warranties of merchantability and fitness for any particular purpose to a term of one year and any express warranty to those contained within the document itself. (Defendant's Brief In Support of Motion For Summary Judgment, Exhibit C.) Also, the Magistrate Judge noted that a salesman for the retailer made a statement to the Plaintiffs at the time of purchase that the television was ". . . the best projection TV on the market." *See Report and Recommendation*, at 13. If Defendant made any express warranties to the Plaintiffs, they are limited to the document itself and the statement made

by the salesman. But Plaintiffs have not alleged that they relied on the salesman's statement in making their purchase or that the television set was not the best projection television on the market.

■ In addition, the Plaintiffs also alleged that the Defendant breached the implied warranties mentioned earlier. Although not discussed by the Magistrate Judge, in order "[t]o establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller (citation omitted). Under implied warranty theory, a defect is established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use (citation omitted)." *Guaranteed Construction Company v. Gold Bond Products,* 153 Mich.App. 385, 392, 395 N.W.2d 332 (1986). Here, as discussed earlier, Plaintiffs have not shown through either direct or circumstantial evidence that the product was defective when it left the manufacturer. Also, Plaintiffs used the television set for approximately two years prior to the fire without experiencing any problems or having the television set serviced. (Plaintiffs' Brief In Opposition To Defendant's Motion For Summary Judgment, at 4.) Thus Plaintiffs are unable to argue successfully that the television set was not reasonably fit for its intended use for at least a two-year period. Therefore, as the Magistrate Judge concluded, Plaintiffs have failed to show any breach of express or implied warranties and Defendant is entitled to summary judgment.

## C. *Spoilation of Evidence*

■ As the Magistrate Judge correctly noted, the unavailability of evidence due to a plaintiff's pre-litigation destruction of it and corresponding negative inferences from such destruction do not necessarily mandate summary judgment. However, the Magistrate Judge continued and quoted the *Beil* court as to circumstances when summary judgment may be appropriate. "[T]he defendant may be entitled to judgment as a matter of law because the plaintiff is unable, due to the unavailability of the evidence and negative inferences to offer evidence sufficient to support its case." *Beil v. Lakewood Engineering and Manufacturing Company,* 15 F.3d 546, 553 n. 1. (6th Cir.1994). Here, although Plaintiffs have asserted that they preserved all relevant evidence, the destruction, or more correctly, the failure to retain other potentially relevant items showing another plausible source of ignition, does not allow Plaintiffs to produce either direct or circumstantial evidence sufficient to support their case. In particular, based on the evidence remaining, Plaintiffs were unable to identify any specific defect nor present any circumstantial evidence that would support a reasonable inference of a defect. Accordingly, Defendant is entitled to summary judgment.

## III.

Plaintiffs have failed to sustain their burden under Federal Rule of Civil Procedure 56. The Court comes to this conclusion viewing the facts in the light most favorable to the Plaintiffs and notes that the Plaintiffs have not shown any genuine issue of material fact regarding a defect or circumstantial evidence that would support a reasonable inference of a defect.

Accordingly, the Magistrate Judge's Report and Recommendation is **ADOPTED,** and the instant case be, and hereby is, **DISMISSED.**

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

MORGAN, United States Magistrate Judge.

This matter is before the court on the motion of the defendant for summary judgment and plaintiffs' response. The case is before the court based on diversity and was referred to the undersigned by Hon. George La Plata to whom the case was then assigned. Plaintiffs, the Austins, experienced a fire in their home on June 29, 1993, which they contend was caused by the Mitsubishi television set manufactured by the defendant. Plaintiffs have filed a two count amended complaint raising claims of negligence and breach of warranty. They argue that the fire was the result of negligent design and manufacture and that defendant negligently

failed to warn of hazards, and that defendant breached an express and implied warranty. Oral argument was held on the motion before the magistrate judge. For the reasons set forth in this report, it is recommended that the motion of the defendant be granted and the case dismissed.

### STATEMENT OF FACTS

The facts are taken from the depositions and exhibits submitted by the parties. Discovery is closed.

On May 18, 1991, plaintiff Chad Austin purchased a Mitsubishi VS 5004R projection television at the Highland Superstore. The television had a limited one year warranty from the date of the original retail purchase. The television was delivered to the residence, where the Austins placed it along the south wall of the living room. This wall contained two separate electrical outlets into which electrically powered products were plugged. Next to the television was an entertainment center which contained a stereo receiver, compact disc player, cassette deck, and VCR. A cable television receiver box and an electric potpourri lamp, which heated potpourri, sat on top of the television. In addition, two fish tanks, each with an electrically powered air pump, heater, and filter were positioned on a stand immediately adjacent to the right of the television. A cordless telephone system, telephone answering device, humidifier, Super Nintendo and Sega game systems were also present in the vicinity. The television plugged into a "spreader" which in turn plugged into the electrical outlet located several feet to the left of the television. The components inside the entertainment center and the cable box were plugged into a surge protector strip, which was also plugged into the same outlet. The fish tank equipment, some of which was plugged into a brown extension cord, and the potpourri lamp were plugged into the outlet between the television and the fish tanks.

On the day of the fire, Mrs. Austin left to shop for groceries about 4:00 p.m. The television had been on in the morning, but was turned off when she left and when her husband left at 4:30 p.m. to go to work. His place of work was next door to his home.

Realizing that he had forgotten something, Mr. Austin returned about 15 or 20 minutes later and found the windows of the home blackened with smoke. He stated that as he entered the home, he saw flames coming directly from the television screen. The top of the television was already burned off and had dropped into the center, the screen was "completely gone" but the sides of the TV were still standing upright. He said that the smoke detectors did not alarm because they were already melted.

Mr. Austin attempted to put out the fire with a garden hose, and ten or 15 minutes later, the Warren Fire Department arrived and extinguished the fire. Lawrence Tyburski, firefighter, was one of the first on the scene and could not determine the ignition source of the fire. His incident report indicates, "TV/Radio/Phonograph," and "Mitsubishi 50 TV" as equipment involved in the fire's ignition, but Officer Tyburski's affidavit indicates that he does not presently exclude the stereo equipment, fish tank components, or potpourri lamp as possible ignition sources.

Citizens Insurance Company paid plaintiffs $115,982 to compensate them for the fire, smoke, and water damage. Citizens did not conduct a fire cause and origin investigation at the scene. Citizens contracted Sadler and Associates to retrieve the Mitsubishi television from the fire scene and to evaluate it for a possible subrogation claim. On July 6, 1993, Keith Sadler photographed the fire scene, retrieved the TV, the brown and white extension cords, and parts of the potpourri lamp. The brown extension cord was crimped and under the leg of the aquarium stand. The fish tanks, all component parts, the cord from the potpourri light, the cable television box, the cordless phone system, and the answering machine were discarded after the fire. Mr. Billy Sadler, plaintiffs' expert, inspected the remains of the television, including parts of the screen, cabinet, chassis, circuit boards, wire harnesses, and power supply assemblies. (B. Sadler Dep. 70–71) No defective component was found by Mr. Sadler. (Sadler Bill, Ex. L) At deposition, Mr. Sadler opined that the TV caused the fire, but he could not identify the ignition source within the television, and he

could offer no theory on what TV component caused the fire. (B. Sadler Dep. 89–92) He noted that the TV seemed to be a very well constructed set and he concluded that Mitsubishi did not violate any safety standards or industry standards in its design or manufacture. (B. Sadler Dep. 98–99) Further, Mr. Sadler found no design defect in this case. (B. Sadler Dep. 99–100)

Defendant Mitsubishi was not notified of the fire or the alleged defect in the TV until after the filing of the complaint in this lawsuit in 1995. Mitsubishi's expert, Barker Davies, reviewed the available evidence and found no defect. He testified that the VS 5004R TV was approved by Underwriter's Laboratories, which establishes safety standards for certain products and ascertains conformity with those standards. These were aimed, in part, at determining whether the TV's components were sufficiently fire retardant in the event of a spark or short within the unit. (Deposition of Barker Davies 28–29) The U.L. Hazard testing supports this. (Ex. N)

Mitsubishi now moves for summary judgment contending that plaintiffs cannot sustain their burden of proof that the product was defective and such defect was the proximate cause of the fire, and that, therefore, defendant is entitled to judgment as a matter of law.

### STANDARD OF REVIEW

Summary judgment is governed by Fed. R.Civ.P. 56, which reads in pertinent part:

> The judgment sought shall be rendered forthwith if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

The Supreme Court in *Celotex* discussed the standard for granting summary judgment. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of the plaintiff's case. *Id.,*

at 324, 106 S.Ct. at 2553. The court adopted the following standard: "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.,* at 325, 106 S.Ct. at 2554. Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact. *Id.,* at 588, 106 S.Ct. at 1356–57; see also, *Roby v. Center Companies,* 679 F.Supp. 664 (E.D.Mich.1987).

Since this case is before the court pursuant to its diversity jurisdiction, Michigan law controls the substantive determinations. Product liability law in Michigan focuses on the liability of a supplier of a product for physical harm to person or property caused by defects in the product. *Mich.Comp.Laws Ann.* § 600.2945 (1996). Under Michigan law, plaintiffs must show, in a product liability case, that (1) the product had a defect; (2) that the defect was attributable to the defendant; and (3) that the defect was a proximate cause of plaintiffs' injuries. *Piercefield v. Remington Arms,* 375 Mich. 85, 88–89, 133 N.W.2d 129 (1965). "Proof of a possible defect and injury is insufficient to form a case [which could be submitted] to a jury." *Cassette v. General Motors Corp.,* 73 Mich. App. 225, 228, 251 N.W.2d 275 (1977).

### NEGLIGENCE CLAIM

1. **Plaintiffs have not shown a defect relating to the design and manufacture of the television.**

#### a. *Manufacturing Defect*

Plaintiff must show that the product did not perform as intended by the manufacturer, when the claim is one for a manufacturing defect, and that the product was defective when it left the control of the manufacturer. *Prentis v. Yale Manufacturing Co.,* 421

Mich. 670, 683, 365 N.W.2d 176 (1984); *Holloway v. General Motors Corp.*, 403 Mich. 614, 621, 271 N.W.2d 777 (1978); *Marderosian v. Stroh Brewery Co.*, 123 Mich.App. 719, 725, 333 N.W.2d 341 (1983). Plaintiff must establish the existence of a defect and that the defect was attributable to the manufacturer. *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982); see also *Fisher v. Kawasaki Heavy Industries, Ltd.*, 854 F.Supp. 467 (E.D.Mich.1994); *Messer v. Floyd Rice Ford Inc.*, 91 Mich. App. 644, 284 N.W.2d 139 (1979).

Defendant is entitled to summary judgment on the claim for defective manufacture. Plaintiff has not identified any defect. Plaintiffs' own expert found the TV to be "a very well constructed set." (B. Sadler Dep. 99) He found no defective component and other sources of possible ignition in the area were not eliminated. Even if there were a defect, plaintiffs have not shown that it was present at the time the set left the manufacturer or that it caused the fire.

Michigan law requires the plaintiff show that the 1) manufacturer had a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury and that 2) they breached that duty. *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982). In the deposition, Mr. Sadler was asked if he was, "... able to conclude based upon [his] observations that any standards were violated here [by Defendant]." The plaintiffs' expert witness replied, "My conclusions are not that they violated any safety standards ... it seemed like a very well constructed set." (Deposition, pp. 98–99).

In Mr. Sadler's deposition, he was asked if he was, "... able to identify a specific ignition source within the television itself." (Deposition, p. 89). Mr. Sadler replied, "No, I have not." *Id.*, at 89. Since Mr. Sadler was unable to find a specific defect, he was then asked to theorize generally on any specific area within the television where the fire could have started. Again, Mr. Sadler was unable to conclude with any certainty that a given area within the television was defective. Mr. Sadler went on to provide a variety of hypotheses on where the fire might have started. For instance, Mr. Sadler mentions the power tubes behind the television, the harness in the center of the set, the wire along the back of the power cord, and the circuit board itself. *Id.*, at 89–90. However, Mr. Sadler never pinpointed any one part of the television as the ignition source. Any one of the parts raised by Mr. Sadler may or may not have started the fire. Ultimately, Mr. Sadler summarized, "... I don't have a specific area. I can't say and point—I couldn't take a schematic and point to you it started right in here." *Id.*, at 91. As evidenced through case law, it is plaintiffs' burden to supply adequate evidence of a specific defect or a reasonable probability that the defendant's product was responsible for the cause of the fire. *Central Soya Co., Inc. v. Rose*, 135 Mich.App. 180, 352 N.W.2d 727 (1984); *Chambers v. General Motors Corp.*, 123 Mich.App. 619, 333 N.W.2d 9 (1982); *Messer v. Floyd Rice Ford, Inc.*, 91 Mich. App. 644, 284 N.W.2d 139 (1979).

■ The doctrine of *res ipsa loquitur* is inapposite to plaintiffs' claim. That doctrine allows a plaintiff under some circumstances to survive a motion for summary judgment where (1) the event was of a kind which ordinarily does not occur unless someone was negligent, (2) that the event was caused by an instrumentality in the exclusive control of the defendant, (3) the event was not due to an voluntary action or contribution on the part of plaintiffs, and (4) evidence of the true explanation of the event is more readily available to defendant than plaintiff. *Jones v. Porretta*, 428 Mich. 132, 150–151, 405 N.W.2d 863 (1987). Here, the TV was not in the exclusive control of Mitsubishi for at least the two years after plaintiffs bought it, it cannot be said that the event was not due to action or contribution by plaintiff, and the true explanation is not more available to defendant.

Because plaintiffs have failed to identify any defect which was traceable to the hands of the manufacturer, defendants are entitled to summary judgment, see, *Caldwell v. Fox*, 394 Mich. 401, 410, 231 N.W.2d 46 (1975).

### b. *Negligent Design Defect*

In order to establish the liability of a designer, plaintiff establish four elements:

1. Duty upon the designer to design its product so as to eliminate any unreasonable risk of foreseeable injury;

2. A breach of that duty;

3. Injury and damages; and,

4. A causal connection between the defect and the injury or damage, i.e. proof that the defect caused the injuries.

*Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 425, 326 N.W.2d 372 (1982); *Fisher v. Kawasaki Heavy Industries Ltd.,* 854 F.Supp. 467, 469 (E.D.Mi., 1994). Plaintiff must present data or other factual evidence concerning the magnitude of the risk, the utility or relative safety of alternatives, and evidence otherwise concerning the unreasonableness of risks arising from the alleged defect. *Owens,* 414 Mich. at 432, 326 N.W.2d 372. This is referred to as the risk-utility test.

Plaintiffs have offered no evidence to support negligent design. No design defect has been identified. No alternative designs to eliminate any alleged defect have been proposed. Plaintiffs must show more than an accidental injury which might have been avoided if the set were designed differently. *Snider v. Stanley Works,* 1994 WL 326005 (6th Cir.1994) (unpublished decision; Ryan, J.) There is simply nothing to support the claim that the TV was defective by means of design, or that any such defect was the proximate cause of the damage. Defendant is entitled to summary judgment on the claim for defective design.

### c. *Circumstantial evidence is insufficient to support plaintiffs' claim here.*

Plaintiffs contend that circumstantial evidence without a specific demonstrable defect is sufficient to show a product liability action, relying on *Garmo v. General Motors Corp.,* 45 Mich.App. 703, 207 N.W.2d 146 (1973). Plaintiffs argue that summary judgment is inappropriate because they can draw reasonable inferences from circumstantial evidence without specifically proving the existence of a demonstrable defect.

Plaintiff cites *Michigan Mutual Insurance Co. v. RCA Corporation* (Mich.App. Docket No. 102832, issued April 19, 1990) an unpublished opinion. Plaintiffs have not attached a copy, and it does not appear on Westlaw. Plaintiffs also rely on a 1942 Michigan Appellate Court decision which ruled that a product could be established as defective even though the plaintiff offered no testimony about a specific defect. *Harrison v. Lorenz,* 303 Mich. 382, 6 N.W.2d 554 (1942). Plaintiffs' argue that an indication of a defective design may be entirely circumstantial and that the defect may be inferred from the failure or behavior of the product.

Establishing a product defect from circumstantial evidence without identifying a specific cause is no longer the rule in Michigan. The Michigan Supreme Court has revised their assessment in analyzing a manufacturers' liability in negligent design and production. The burden of proof has been met if the plaintiff presents,

"... data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the 'unreasonableness' of risks arising from [the alleged defect]."

*Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 432, 326 N.W.2d 372 (1982).

In addition, the defendant would be entitled to judgment as a matter of law if the plaintiff failed to present a *prima facie* case by producing factual evidence of a defect. *Fisher v. Kawasaki Heavy Industries, Ltd.,* 854 F.Supp. 467 (E.D.Mich.1994). Therefore, circumstantial evidence which merely raises a slight likelihood that a product may be defective is insufficient to hold a defendant liable. Here, at most, only a slight likelihood is shown. Plaintiff's expert Billy Sadler concedes he was never present at the fire scene. (Deposition, p. 48) The importance of examining the scene of a fire firsthand was stressed when Billy Sadler stated, "... most jobs you just don't want to go testify on photographs. I wouldn't want to. It's best to go to the scene. I would be the first to admit that." *Id.,* at 48. Therefore, based on

Billy Sadler's own investigative standards, the conclusions he sets forth concerning the origin of the fire remain questionable by the fact that he did not personally examine the scene.

Circumstantial evidence may be used to establish a reasonable probability that the defect complained of is attributable to the manufacturer; however, plaintiff must first establish the existence of a defect. To establish a defect, he may show a demonstrable malfunction in a product or behavior that contradicts the assumption that the product will serve a normal use without causing injury. *Messer v. Floyd Rice Ford, Inc.,* 91 Mich.App. 644, 284 N.W.2d 139 (1979). As the court stated:

> "The plaintiff must first establish existence of a defect and to do so, he may show a demonstrable malfunction in product, or behavior that contradicts the assumption that the product, will serve normal use without causing injury [citation omitted]. A plaintiff then must establish reasonable probability, either by direct evidence or by inference from circumstantial evidence, that the defect complained of is attributable to the manufacturer. [citation omitted]"

*Id.* 91 Mich.App. at 651, 284 N.W.2d at 142.

In the case-at-bar, the plaintiffs have failed to meet their burden. Since plaintiffs were unable to either identify a specific defect or provide a reasonable probability that the defect was attributable to the defendant, the plaintiffs have failed to meet the requirements to prevail in a product liability action.

**2. Plaintiffs have not shown evidence of failure to warn.**

 In addition to proving causation and damages, in order to prevail on a claim of failure to warn, a plaintiff must show that the defendant had actual or constructive knowledge of the claimed danger; had no reason to believe that end-users would realize the dangerous condition; and failed to exercise reasonable care to inform users of its dangerous condition or of the facts that make it likely to be dangerous. *Glittenberg v. Doughboy Recreational Industries,* 441 Mich. 379, 389–390, 491 N.W.2d 208 (1992). In this case,

plaintiffs have no warnings expert and do not address this claim in the response to defendant's motion. As noted by defendant in its answer to interrogatory number 22, no other lawsuits or claims have been filed against it in which it was alleged that the VS 5004R television caused a fire. The Owners Manual accompanying the television, which was purchased new by the Austins, contained warning language advising against using the television near water or moisture, with certain extension cords, in a situation where power cords are pinched or walked on, and in situations where the electrical source is overloaded. (Exhibit Q to defendant's motion) Nothing shows that the warnings were inadequate or that lack of an alternative warning proximately caused the fire. Defendant is entitled to summary judgment on this claim.

### BREACH OF WARRANTY CLAIMS

Plaintiffs allege that the "Austins relied upon defendant's skill and judgment in designing, manufacturing, distributing, and selling the television that it would be safe and fit for its ordinary and/or intended use and purpose and would be of merchantable quality." (Amended complaint, par. 19) Plaintiffs further allege that the "television was defective. . . . and that the said defects caused it to malfunction . . ." (Par. 20) "As a direct and proximate result of said breach of express and implied warranties, plaintiff's subrogors were damaged. . . ." (Par. 21)

 As noted by defendant, an express warranty is created by a seller making a promise or affirmation regarding goods with the intent that they will conform. *Guaranteed Construction v. Gold Bond Products,* 153 Mich.App. 385, 390, 395 N.W.2d 332 (1986). An express warranty may also arise if the statements would lead a reasonable buyer to believe that such statements had been made to induce the bargain. *Hansen v. Firestone Tire and Rubber Co.,* 276 F.2d 254, 257 (6th Cir.1960) (Martin, J., applying Michigan law).

Plaintiffs have not shown that defendant made any express warranties to the Austins. Mitsubishi provided a limited warranty in conjunction with the purchase. (Exhibit C to

defendant's brief) It is not alleged that this was breached. Other than the salesman's statements at Highland when the Austins bought the TV, to the effect, "It is the best projection TV on the market," no other statements were made. This is insufficient to show any express warranty, any reliance, or any breach by Mitsubishi. Defendant is entitled to summary judgment.

### SPOILATION OF EVIDENCE

Finally, defendant contends that the failure to preserve other potential sources of the fire's ignition renders plaintiffs' claims against Mitsubishi merely conjectural and dismissal is appropriate. Defendant argues that it makes no difference that the destruction may have been inadvertent because the result is the same: defendant is unable to examine the other possible causes of the fire, prejudicing Mitsubishi's efforts to present a defense that the fire was caused by some source other than the television. In addition, without the evidence, plaintiffs have not eliminated these products as the source of the fire and defendant is entitled to summary judgment. In response, plaintiffs contend that they preserved all "relevant" evidence. They argue that failure to preserve the aquarium units, the cable television box, the potpourri's light cord, the cordless phone and the telephone answering machine doesn't matter; they were discarded only after plaintiffs' expert determined the cause of the fire. Plaintiffs argue that the case should not be dismissed as a sanction, relying on *Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d 546 (6th Cir.1994).

In *Beil*, a case applying Kentucky law, the court held that dismissal pursuant to Rule 37 was an abuse of the court's discretion under the circumstances of that case. The court recognized that the burden of proof may be appropriately shifted to the party responsible for discarding the evidence, or a jury may draw negative inferences about discarded evidence. Although dismissal under Rule 37 was rejected, the court noted: "nevertheless, summary judgment may be granted pursuant to Rule 56 or verdict directed pursuant to Rule 50 of the Federal Rules of Civil Procedure, if the district court determines that the defendant is entitled to judgment as a matter of law because the plaintiff is unable, due to the unavailability of the evidence and the negative inferences, to offer evidence sufficient to support its case." *Id.* at 15 F.3d 546, 553 n. 1.

In this case, the evidence was unavailable for defendant's expert to examine. Indeed, plaintiffs' expert did not examine most of it. The failure to preserve it impacted on the defendant's ability to cross-examine plaintiff's expert regarding his opinion, and renders plaintiffs' allegations that the TV caused the fire mere conjecture. As stated in *Arthur v. Chrysler Corp.*, 446 F.2d 429, 432 (6th Cir.1971), quoting the Michigan Supreme Court in *Kaminski v. Grand Trunk Western R. Co.*, 347 Mich. 417, 422, 79 N.W.2d 899 (1956),

> "As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in evidence."

Plaintiffs assertion that they preserved all relevant evidence is not persuasive. They alone made the determination and made it in conjunction with a determination to file a subordination claim related to the television. The determination to discard the evidence was not made by the individual plaintiffs, the Austins, but by the insurance company, and perhaps its expert, who knew or should have known that destruction of the evidence would preclude Mitsubishi from disproving alternate plausible theories. Since plaintiffs have failed to preserve the other items which might show another plausible source of ignition, plaintiffs allegations that the television caused the fire cannot rise to more than a

conjecture. Accordingly, Mitsubishi is entitled to summary judgment.

For all the reasons discussed above, it is recommended that the defendant's motion for summary judgment be granted and the case be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Sept. 16, 1996.