CENTRAL SOYA COMPANY, INC v ROSE

Docket No. 68145. Submitted December 12, 1983, at Grand Rapids.—
     Decided June 5, 1984.

  Central Soya Company, Inc., filed a lawsuit against George Rose
     in district court to collect the balance due on Rose's purchase of
     certain hog feed products. Rose filed a counterclaim alleging
     that his use of Central Soya's feed program resulted in substan-
     tial damage to his swine herd. The matter was removed to
     Emmet Circuit Court. At the close of Rose's proofs on his
     counterclaim, Central Soya moved for a directed verdict. The
     motion was denied, Martin B. Breighner, J. Central Soya
     subsequently moved for a partial directed verdict. That motion
     was also denied. Following trial, the jury found in favor of
     Central Soya on the collection action in an amount of $3,793.91
     and awarded Rose $33,000 in consequential damages and $11,-
     000 as reimbursement of sums paid for the defective feed
     program. Central Soya moved for judgment notwithstanding
     the verdict or a new trial. The motion was denied, and judg-
     ment was entered. Central Soya appeals. *Held:*

     1. The trial court did not err in denying Central Soya's
     motions for a directed verdict and partial directed verdict. The
     evidence was sufficient to support a reasonable inference that
     the feed program supplied by Central Soya was defective.

     2. The trial court did not err in not giving a jury instruction
     proposed by Central Soya to the effect that Rose failed to
     produce any evidence of a defect or deficiency in any of the
     feeds he purchased from Central Soya and that therefore the
     only question for the jury was whether the feeding program
     offered by Central Soya was not fit for its intended use. Rose

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 481 *et seq.*
[2] 75 Am Jur 2d, Trial § 520.
    63 Am Jur 2d, Products Liability § 9.
[3] 63 Am Jur 2d, Products Liability §§ 375-380.
[4] 63 Am Jur 2d, Products Liability §§ 324, 353 *et seq.,* 545.
Manufacturer's or seller's duty to give warning regarding product
    as affecting his liability for product-caused injury. 76 ALR2d 9.

produced evidence of inaccurate or insufficient instructions, which alone can constitute a product defect.

3. The trial court did not abuse its discretion in giving a jury instruction which reserved to the jury the determination of whether Rose's inability to produce feed samples was the result of reasonable actions on his part.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

A trial court, in ruling on a defendant's motion for a directed verdict, is to view the evidence in the light most favorable to the plaintiff and determine whether the evidence establishes a prima facie case against the defendant; the motion should be granted only where there is no question for the trier of fact, that is, where all reasonable men would agree that there has been an essential failure of proof.

2. PRODUCTS LIABILITY — DIRECTED VERDICT.

A plaintiff in a products liability case, in order to avoid a directed verdict in the defendant's favor, is obligated to produce evidence reasonably leading to the conclusion that the defendant supplied a product which was defective and that the defect caused the plaintiff's injury.

3. PRODUCTS LIABILITY — DIRECTED VERDICT — EVIDENCE — INFERENCES.

The plaintiff in a products liability action need not establish the exact nature of the alleged defect to withstand a directed verdict for the defendant but must show through direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer or seller; however, where the evidence establishes two or more equally plausible causes for the injury, the selection by the jury of one of the causes would be based not upon reasonable inferences but upon conjecture; in such cases directed verdicts are proper.

4. PRODUCTS LIABILITY — WARNINGS AND INSTRUCTIONS — IMPLIED WARRANTY.

The plaintiff in a products liability action may fulfill his burden of establishing a defective product attributable to the manufacturer by showing that the manufacturer failed to supply appropriate warnings or instructions necessary for the safe use of the product; if such warnings or instructions are required, the information provided must be adequate, accurate and effective; thus, the failure to provide adequate instructions or warnings

can constitute a product defect sufficient to sustain an implied warranty claim.

*Rhoades, McKee & Boer* (by *Michael W. Betz),* for plaintiff.

*John P. Ternes,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and BRONSON and R. L. TAHVONEN,* JJ.

PER CURIAM. Appellant, Central Soya Company, Inc., appeals as of right from a judgment entered on a jury verdict awarding damages to appellee George Rose on his products liability counterclaim.

Central Soya began this action in district court to collect the balance due on Rose's purchase of certain hog feed products. Rose filed a counterclaim alleging that his use of Central Soya's feed program resulted in substantial damage to his swine herd, including the death of 927 young pigs during the winter of 1979-1980. The matter was removed to Emmet County Circuit Court. At trial the jury was instructed relative to the counterclaim on theories of breach of contract and express and implied warranties. A general verdict form was submitted. The jury found in favor of Central Soya on the collection action ($3,793.91) and awarded Rose $33,000 in consequential damages and $11,000 as reimbursement of sums paid for the defective feed program. Central Soya's motion for judgment notwithstanding the verdict or a new trial was denied.

Central Soya contends that the trial court erred in denying its motions for directed verdict and partial directed verdict. We disagree.

In ruling on a motion for directed verdict the

* Circuit judge, sitting on the Court of Appeals by assignment.

trial court must view the evidence in a light most favorable to the plaintiff and determine whether the evidence establishes a prima facie case against the defendant. The motion should be granted only when there is no question for the trier of fact, *i.e.,* where all reasonable men would agree that there has been an essential failure of proof. *Bullock v Gulf & Western Manufacturing,* 128 Mich App 316, 319; 340 NW2d 294 (1983). In order to avoid a directed verdict in a products liability case, the plaintiff must produce evidence reasonably leading to the conclusion that the defendant supplied a product which is defective and that this defect caused the plaintiff's injury. *Caldwell v Fox,* 394 Mich 401, 410-411; 231 NW2d 46 (1975).

To withstand a directed verdict in a products liability action, the plaintiff need not establish the exact nature of the alleged defect but must show through direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer or seller. *Kupkowski v Avis Ford, Inc,* 395 Mich 155, 161; 235 NW2d 324 (1975); *Chambers v General Motors Corp,* 123 Mich App 619, 621; 333 NW2d 9 (1982). However, where the evidence establishes two or more equally plausible causes for the injury, the selection by the jury of one of the causes would be based not upon reasonable inferences but upon conjecture. In such cases directed verdicts are proper. *Chambers, supra.* The plaintiff may fulfill his burden of establishing a defective product attributable to the manufacturer by showing that the manufacturer failed to supply appropriate warnings or instructions necessary for the safe use of the product. If such warnings or instructions are required, the information provided must be adequate, accurate and effective. *Antcliff v State Employees Credit*

*Union,* 414 Mich 624, 638; 327 NW2d 814 (1982), *reh den* 417 Mich 1103 (1983). Thus, the failure to provide adequate instructions or warnings can constitute a product defect sufficient to sustain an implied warranty claim. *Antcliff, supra; Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979).

Applying these principles, we find that the evidence was sufficient to support a reasonable inference that the feed program supplied by Central Soya was defective in that Central Soya did not provide accurate and adequate instructions for safe use of the products.

There was expert testimony that anemia was probably a major factor in the deaths of the pigs. While the cause of the anemia was disputed, there was expert testimony to support an inference that it resulted from insufficient iron, insufficient food rations to pregnant sows and gilts during part of the gestation period, causing decreased milk production and the birth of pigs with lower resistance to disease, and insufficient nutrition of the young pigs prior to and during the weaning stage. There was also evidence reasonably connecting the iron and nutrition deficiencies to Central Soya's instructions concerning the feed program. One veterinarian testified that the 18-gauge needle recommended by Central Soya for administration of the iron supplement was too large and may have caused excessive iron to leak out. Another expert testified that the rations of feed recommended by Central Soya for pregnant sows and gilts were inadequate in the northern Michigan climate. Also, there was evidence that Rose was not informed of the shelf life of the feed for the young pigs, which may have resulted in unpalatability and, hence, inadequate nutrition. While the evi-

dence was certainly not clear-cut, we believe it was sufficient to support a reasonable inference that the food program sold by Central Soya to Rose was defective. The motions for directed verdict and partial directed verdict were correctly denied.

In a related argument Central Soya contends that the trial court erred in refusing to give the following proposed instruction:

"As to the claim asserted by Mr. Rose against Central Soya, I instruct you that Mr. Rose has introduced no evidence, whatsoever, of any defect or deficiency in any of the feeds bought and used by Mr. Rose. For that reason when you consider Mr. Rose's claim you may consider only the question of whether the feeding program provided to Mr. Rose by Central Soya through its brochures and sales people was not fit for its intended purposes."

As noted above, Rose produced evidence of inaccurate or insufficient instructions which alone can constitute a product defect. Since there was evidence of a product defect, rejection of the instruction was proper.

Finally, Central Soya contends that the trial court erred in failing to give SJI 6.01a, to the effect that Rose's failure to produce a sample of the alleged defective products may result in a jury inference that the evidence would have been adverse to him. Instead, the court charged the jury as follows, based on SJI 6.01c:

"George Rose, in this case, has not offered the feed or an analysis of the feed which he purchased from Central Soya. As this evidence was under the control of George Rose and could have been produced by him, you may infer that the evidence would have been adverse to George Rose if you believe that no reasonable excuse

for George Rose's failure to produce the evidence has been shown."

Under the facts adduced at trial, we find that the trial court did not abuse its discretion in giving the instruction which reserved to the jury the determination of whether Rose's inability to produce feed samples was the result of reasonable actions on his part.

Affirmed.