KINZIE v AMF LAWN AND GARDEN, DIVISION OF AMF, INC

Docket No. 91478. Submitted March 5, 1987, at Detroit. Decided April 4, 1988. Leave to appeal applied for.

Paul A. Kinzie brought a products liability action in the Genesee Circuit Court against AMF Lawn and Garden, Division of AMF, Inc., and Dynamark Corporation for damages for injuries sustained when a lawn mower tipped over, gasoline spilled from it and the gasoline ignited. A jury returned a verdict for the plaintiff in the amount of $5,000,000 reduced to $1,000,000 because plaintiff was found to be eighty percent comparatively negligent. Defendants appeal following the denial of their motion for a directed verdict or judgment notwithstanding the verdict by the trial court, Philip C. Elliott, J.

The Court of Appeals *held:*

1. The trial court properly admitted the testimony of plaintiff's expert witness and denied defendants' motion for a directed verdict or judgment notwithstanding the verdict.

2. There was sufficient evidence to support the verdict. The verdict was not excessive.

Affirmed.

P. R. Joslyn, J., dissented. It is his belief that the trial court erred in denying defendant's motion for a directed verdict or judgment notwithstanding the verdict. He believes that plaintiff failed to present a prima facie case of a design defect. He would reverse.

1. Witnesses — Expert Witnesses.

The fact that an expert witness' qualifications may be overshadowed by those of opposing experts goes to the weight to be given to the expert's testimony rather than the admissibility thereof.

References

Am Jur 2d, Expert and Opinion Evidence §§ 2, 24-32, 181 *et seq.*
Am Jur 2d, Products Liability §§ 1-9.
Am Jur 2d, Trial §§ 463 *et seq.*
For annotations, see the Index to Annotations, under Expert and Opinion Evidence, and Products Liability.

2. WITNESSES — EXPERT WITNESSES.

The critical inquiry with regard to the admission of expert testimony is whether such testimony will aid the factfinder in making the ultimate decision in the case.

3. MOTIONS AND ORDERS — DIRECTED VERDICTS — PRODUCTS LIABILITY.

A plaintiff, to withstand a motion for a directed verdict in a products liability action, need not establish the exact nature of the alleged defect but must show through direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer or seller; the plaintiff is required to present evidence concerning both the magnitude of the risk involved and the reasonableness of the alternative design advanced by the plaintiff.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Barry P. Waldman*), for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *John A. Kruse, Gary L. Stec,* and *Maurice A. Borden*), for defendants.

Before: M. J. KELLY, P.J., and J. B. SULLIVAN and P. R. JOSLYN,* JJ.

J. B. SULLIVAN, J. This is a products liability action arising from injuries to plaintiff, Paul A. Kinzie, eighteen years old, who was injured when a lawn mower which he was riding up a ramp having a twenty-six degree incline tipped over, spilling gasoline on him. The gasoline ignited, causing severe burns to fifty percent of his body. Following trial, the jury rendered a verdict for the plaintiff in the amount of $5,000,000, reduced to $1,000,000 because plaintiff was found to be eighty percent comparatively negligent. Defendants appeal alleging that the trial court abused its discretion in permitting testimony from the plaintiff's expert, Donald Van Kirk, the trial court improp-

* Circuit judge, sitting on the Court of Appeals by assignment.

erly denied defendants' motion for a directed verdict or judgment notwithstanding the verdict, the verdict was contrary to the great weight of the evidence, and the verdict was grossly excessive. We affirm.

Plaintiff claimed that the lawn mower's dashboard fuel gauge was unreasonably dangerous because it was secured in position only by a grommet of EPDM rubber (ethylene propylene dinam monomer) which plaintiff alleged swells and eventually deteriorates when it comes in contact with gasoline. Plaintiff also alleged that the fuel gauge was the likely source of the gasoline which fed the fire because improper tolerances in the blueprints for the rubber grommet connecting the gauge in the fuel tank resulted in an unnecessary gap, allowing leaks.

Defendants objected to the testimony of plaintiff's expert, Donald Van Kirk. It is well settled that the determination of an expert witness' qualifications is within the discretion of the trial court and will not be overturned on appeal unless it can be shown that the court abused its discretion. *People v Hawthorne*, 293 Mich 15, 23; 291 NW 205 (1940). MRE 702 states:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Although an expert's qualifications may be overshadowed by those of the opposing experts, "such a consideration goes to the weight of the evidence rather than the admissibility." *People v Whitfield*, 425 Mich 116, 123-124; 388 NW2d 206 (1986).

Extensive examination with respect to Van Kirk's qualifications revealed that he had a Bachelor of Science degree in electrical engineering as well as a Master of Science degree in engineering mechanics with training focused on bioengineering. Van Kirk had been employed by Ford Motor Company for almost two years as a product design engineer and also by Wayne State University, where he participated in a research program involving the study and reconstruction of automobile accidents to test the tolerance of the human body in crashes and to help design safer vehicles. He studied more than 4,000 accidents, conducted fifty to sixty crash tests and has prepared papers on accident reconstruction. He also did research on automobile crashes for Ford Motor Company and, while there, was responsible for the design of a vehicle's fuel system and helped design a fuel gauge and fuel line. He testified that in the course of his work he considered the use of EPDM rubber in the fuel system, but ruled it out because it was discovered that gasoline caused it to swell, become gummy and deformed and also to become brittle and crack after it dried.

Van Kirk further testified that he reviewed thirty-seven technical articles concerning lawn mower design and accidents and read approximately one hundred blueprints pertaining to the design of the lawn mower involved in the accident. Additionally, he conducted twenty hours of tests in an attempt to reconstruct the accident with an exemplar lawn mower. Unfortunately, the lawn mower involved in the accident was destroyed and neither party was able to conduct any tests using it.

Defendants challenged Van Kirk's qualifications in that he had never designed a lawn mower or a fuel system for one. His experience had not in-

volved a riding lawn mower, nor was he familiar with the industry-wide standards governing the manufacture of lawn mowers prior to preparing for this case. He conceded that he was not a rubber expert. In ruling that Van Kirk was qualified to testify as an expert, the trial judge stated as follows:

> Well, I am governed by Rule 701. It's a two-pronged test. First I have to determine that recognized scientific, technical, or other specialized knowledge will assist the trier of fact either to understand the evidence, or to determine the fact in issue. I think it's pretty clear that in this case it could be helpful to the jury to have expert testimony about what happened and why. The second matter for me to consider is whether he is a witness qualified as an expert by knowledge, skill, experience, training or education. Well, he is certainly with respect to some of the things that would be of assistance to the trier—to the jury to understand the evidence, and to determine what happened, and he has some limited knowledge that's greater than the jury's as the result of his study for this particular case concerning the materials that went into the fuel gauge and gas tank and the cap, and I am going to let him testify and leave it up to the jury what weight they are going to give his opinion on the matters where he has the least competence.

In later reaffirming his ruling in response to defendants' motion for judgment notwithstanding the verdict, the judge went on to say:

> Was it error to permit plaintiff's expert to testify? As I said earlier, I think the expert was qualified, but barely.

At trial, Van Kirk testified that, in his opinion, the gasoline which caused plaintiff's burns came at

least in part from leakage around the fuel gauge caused by the deterioration of the EPDM rubber. He stated that safer designs were available for a gauge such as a screw-on dashboard gauge or a gauge-in-fuel-cap design. He also testified that a nonvented gas cap was safer in the event of a rollover accident.

Our Supreme Court has held that "[t]he critical inquiry with regard to expert testimony is whether such testimony will aid the factfinder in making the ultimate decision in the case." *People v Smith,* 425 Mich 98, 105; 387 NW2d 814 (1986). Here, the testimony was beyond the lay person's range of knowledge and, therefore, helpful to the jury and properly admitted. Although Van Kirk's qualifications may have appeared inferior when compared with those of the experts offered by defendants, this alone does not serve to disqualify him. The qualifications of the opposing experts go to the weight to be given to their testimony, not the admissibility. Therefore, the testimony was properly admitted.

The trial court denied defendants' motion for directed verdict or judgment notwithstanding the verdict. When faced with such motions, the court must view the evidence in the light most favorable to the plaintiff and determine whether a prima facie case has been established. *Matras v Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986).

> To withstand a directed verdict in a products liability action, plaintiffs need not establish the exact nature of the alleged defect but must show through direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer or seller. *Kupkowski v Avis Ford, Inc,* 395 Mich 155, 161; 235 NW2d 324 (1975). [*Chambers v General Motors Corp,* 123 Mich App 619, 621; 333 NW2d 9 (1982).]

However, the plaintiff is required to present evidence concerning both the magnitude of the risk involved and the reasonableness of the alternative design. *Owens v Allis-Chalmers Corp*, 414 Mich 413, 429; 326 NW2d 372 (1982). Here, plaintiff, having been instructed to mow the lawn, entered the shed where the mower was stored and checked its gasoline level. Unaware of signs inside the shed warning that the mower was not to be driven in or out of the shed but pushed only, he backed it out without difficulty. He then filled the tank and testified that he screwed the fuel cap securely back in place. He testified that, while he smoked cigarettes and carried a lighter, he was not smoking as he proceeded to drive the mower back up the ramp which was built• at a twenty-six degree incline. When the mower began to slide backward, he braked. The front end tipped over backwards off the ramp, landing on top of him. He was almost instantly engulfed in flames which severely burned his face, arms, chest, back and a small portion of his legs.

Van Kirk testified that the vented fuel cap was defective because in case of a lawn mower tip-over, which the literature indicated was a common problem, gasoline would drain out of the vent hole in the cap. He testified that an alternative design was available in the form of a nonvented fuel cap. The parties stipulated that the fuel tank itself had not leaked and none of the experts believed that the cap itself had come off.

Defendants' expert, George Wahl, called by plaintiff as an adverse witness, testified that the screw-on type dashboard gauge design was available at the time the machine was manufactured. In fact, it had been used on an earlier model but, he said, the switch to the press-fit gauge used on this machine was made for safety reasons. He also

pointed out, and plaintiff's expert conceded, that in studies done on lawn mower accidents there had been no reports of a rollover in which the operator had been burned by a fuel-fed fire. Wahl did acknowledge, however, that defendant had discontinued the dashboard gauge design and had gone to the gauge-in-fuel-cap design. He further testified that the vent hole was necessary for fuel to drain out of the tank during normal usage.

Therefore, plaintiff did demonstrate that lawn mower tip-overs were common enough to be foreseeable and the defense conceded as much. Plaintiff presented enough evidence from which the jury could conclude that the lawn mower's dashboard fuel gauge was designed in such a way that the predictable deterioration of the EPDM rubber created a foreseeable risk of gas leakage in the case of a rollover accident. While plaintiff denied that he was smoking at the time, and there was no testimony to the contrary, it would not appear to be unforeseeable that lawn mower operators might, indeed, be smoking and that leakage of gasoline would in such instances present a hazard. Van Kirk did concede that he knew of no lawn mower manufacturer using a nonvented cap. Nonetheless, it is an established fact that gasoline did leak and did ignite causing the injuries. Therefore, the trial judge did not err in denying defendants' motion for directed verdict or judgment notwithstanding the verdict.

Defendant also argues that the verdict was against the great weight of the evidence. The trial judge denied the motion, stating:

> Viewing the evidence in the light most favorable to plaintiff, would all reasonable men have to agree that AMF's design of the fuel system on its mower was in no way negligent and did not share

in anyway the blame for the fire? I think this should be answered, "No." However, you want to balance risk-utility or contemplate foreseeability, a jury could rightly conclude that a riding lawn mower ought not pour gasoline on the operator if it tips over onto him.

It was undisputed that plaintiff's injuries were caused from a fuel-fed fire. The dispute centered on the source of the gasoline. A jury could conclude from the evidence presented that this was a result of defective design or from carelessness on the part of the plaintiff. There was sufficient evidence from which the jury could conclude that the fault lay in the design. We find that there was sufficient evidence to support the verdict and, accordingly, the court did not err.

Finally, defendants contend that the jury verdict was excessive and should shock the judicial conscience. In *Stevens v Edward C Levy Co,* 376 Mich 1; 135 NW2d 414 (1965), our Supreme Court held that "[c]ourts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive." *Id.* at 5, quoting *Cleven v Griffin,* 298 Mich 139; 298 NW 482 (1941). Because of the severe burns suffered by the plaintiff covering fifty percent of his body and leaving him grotesquely disfigured, we are not inclined to upset the jury's award. He has already undergone surgery at least ten times and will require more in the future. Testimony showed that he is totally disabled, his social life devastated, and he now suffers severe psychiatric and emotional problems. The jury's reduction of the award by eighty percent for plaintiff's own negligence shows that it did not ignore plaintiff's part in causing the injuries.

The verdict is affirmed.

M. J. KELLY, P.J., concurred.

P. R. JOSLYN, J. *(dissenting).* I respectfully dissent. I am of the opinion that the trial court erred when it denied defendants' motion for a directed verdict or judgment notwithstanding the verdict. The majority opinion concluded that it was an established fact that gasoline did leak from the gas gauge and ignited, causing plaintiff's injuries. Based upon the rationale of *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982), I believe that plaintiff failed to present a prima facie case of a design defect.

When the evidence is viewed in a light most favorable to plaintiff, he did not meet part of his burden of proof.

Plaintiff did demonstrate that lawn mower rollovers were common enough to be foreseeable. Plaintiff also presented enough evidence from which the jury could have concluded that the fuel gauge was designed in such a way that the EPDM rubber created a foreseeable risk of gas leakage in case of rollover. However, these proofs were not sufficient to establish a prima facie case. Plaintiff's expert gave testimony from which the jury might infer that a riding lawn mower rollover and the resulting injuries from a fire were foreseeable, but neither his testimony nor any evidence on the record gave any indication how likely such an event might be. There was absolutely no documented cases of a lawn mower rollover accident in which the operator had been burned by a fuel-fed fire. There also was a similar lack of evidence concerning the likelihood of an accident resulting from a fire fed by fuel dropping from a vent hole in a gas cap.

Plaintiff simply failed to prove that defendant's design of the riding lawn mower was the proximate cause of his injuries. Plaintiff was able to present alternative designs but no evidence was

presented as to the reasonableness of any of the proposed alternative designs.

Accordingly, I would reverse the decision of the trial court.