**Salvatore CAVALIER and Laura Cavalier, Plaintiff,**

v.

**WERNER COMPANY, a Pennsylvania corporation, and Home Depot, U.S.A., Inc., a Delaware corporation, jointly and severally, Defendants.**

Civil Action No. 96–40215.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 21, 1997.

Barry S. Fagan, Dib & Fagan, Detroit, MI, for Plaintiff.

James R. Kohl, Plunkett & Cooney, Detroit, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On March 25, 1996, plaintiffs Salvatore and Laura Cavalier filed this product liability action in Macomb County Circuit Court against Werner Company ("Werner") and Home Depot U.S.A., Inc. ("Home Depot"). On June 11, 1996, the case was removed to this court pursuant to 28 U.S.C. §§ 1332, 1441.

Presently before this court is defendants' motion for summary judgement pursuant to Federal Rule of Civil Procedure 56. For the following reasons, defendants' motion for summary judgment will be granted.[1]

### FACTS

In September of 1994, Salvatore Cavalier ("Salvatore") purchased a six-foot aluminum step ladder from Home Depot. The ladder was manufactured and designed by Werner under the manufacturing name of "All American Ladder." (S. Cavalier Dep. at 24). This particular ladder is a model A306 and is a Type III ladder, which means that it is a light duty, household grade ladder. The ladder's weight rating is 200 pounds. Salvatore weighs approximately 183 pounds.

On October 17, 1994, Salvatore was working on renovations in a building owned by his father at 12500 Thirteen Mile Road in Warren, Michigan. (S. Cavalier Dep. at 16–18). In particular, on this day, Salvatore was stringing up fluorescent lights and was rescrewing light fixtures, and was utilizing the model A306 ladder which he purchased from Home Depot approximately one month earlier.[2] (S. Cavalier Dep. at 18–19).

The room in which Salvatore was working had a concrete floor and ceilings that were approximately nine feet high. (S. Cavalier Dep. at 19–20). Before using the ladder, Salvatore set the ladder on a level, plane surface with the hinges locked. (S. Cavalier Dep. at 37). He then climbed the ladder to the third or fourth rung from the floor and began working on the task of tacking up a light fixture. (S. Cavalier Dep. at 39).

After standing on the ladder for approximately five minutes, during which time he was working with his hands over his head and looking at the ceiling tiles, Salvatore allegedly fell off of the ladder to his left, twisted 180 degrees in the air and landed in a seated position on the floor to the right side of the ladder. (S. Cavalier Dep. at 48). The ladder also allegedly fell and struck him on the right shoulder. (S. Cavalier Dep. at 39–48).

Prior to his alleged sudden descent from the ladder, it was "good," "steady," and "firm" underneath him. (S. Cavalier Dep. at 40). Indeed, Salvatore testified that he felt no sensation of movement whatsoever and did not hear anything prior to his alleged tumble. (S. Cavalier Dep. at 40). There were no witnesses to this alleged accident, although John Lia, a friend of Salvatore's, was in the building at the time. (S. Cavalier Dep. at 18; Lia Dep. at 7).

After his alleged fall from the ladder, Salvatore was driven to Macomb Hospital Center, formerly known as South Macomb, by his friend Lia (S. Cavalier Dep. at 63; Lia Dep. at 27). Salvatore underwent surgical implantation of two titanium plates to repair a comminuted fracture of his left forearm. (Admission Registration Record of Detroit–Macomb Hospital Corp., Exh. H to Plaintiffs' Response to Defendants' Motion for Summary Judgment). Salvatore claims that as a result of the accident, he cannot play ice hockey, and he cannot engage in simple construction activities necessary for the successful continuation of his career, like shoveling and hammering. (S. Cavalier Dep. at 71–74).

On March 25, 1996, Salvatore and his wife initiated this lawsuit against Werner, the manufacturer of the subject ladder, and Home Depot, U.S.A., the seller of the ladder.

---

1. This court has dispensed with oral argument and will decide this matter based upon the written submissions of the parties, as provided for by Local Rule 7.1(e)(2).

2. Salvatore had 17 years of construction experience and was well acquainted with the use of various types of ladders. (S. Cavalier Dep. at 33–35). Salvatore had used the same ladder previously and had been up and down the ladder at least 100 times. (S. Cavalier Dep. at 31–32).

The complaint alleges four counts: manufacturing and/or design defect (Count I), breach of express and implied warranty (Count II), breach of strict liability in tort (Count III), and loss of consortium (Count IV).

On September 16, 1996, Count III of plaintiffs' complaint, a claim of strict liability in tort, was dismissed on the grounds that no such cause of action exists under Michigan law, which governs this case. Currently before this court is defendants' motion for summary judgement on the remaining three counts, namely Counts I, II and IV. For the reasons stated below, this court will grant defendants' motion and dismiss this case.

## ANALYSIS

### Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### Count I—Design and Manufacturing Defect

Count I, which is brought by Salvatore Cavalier, alleges, *inter alia*, that defendants were negligent in failing to properly design and/or manufacture the ladder in question, and in distributing, marketing, and/or selling the ladder that was unreasonably safe due to a design and/or manufacturing defect. The manufacturing defect complained of is a "notch" in the spreader bars of the ladder,[3]

---

**3.** In this particular model of ladder, there is a slight bend or curvature at the end of the spreader bars so that when the ladder is collapsed, the spreader bars clear the rail sections of the ladder. That bend is manufactured into the ladder by a die. When the die presses the spreader bar to fashion this bend, it leaves an impression on the metal. This impression is described by the plaintiffs as a "notch" and by the defendants as a "tooling mark." According to plaintiffs' expert,

while the design defect asserted is insufficient torsional rigidity, or, in other words, inadequate stiffness.[4]

 In order to succeed on his manufacturing and design defect claims, Salvatore must establish a causal connection between the alleged defects and the injury he sustained. *Skinner v. Square D. Co.*, 445 Mich. 153, 165, 516 N.W.2d 475, *reh'g. denied*, 445 Mich. 1233, 521 N.W.2d 15 (1994); *Snider v. Bob Thibodeau Ford, Inc.*, 42 Mich.App. 708, 713, 202 N.W.2d 727 (1972).[5] Plaintiff meets this burden by introducing evidence that affords a reasonable basis for the conclusion that it is more likely than not that the alleged defects were the cause of the harm done. Stated another way, Salvatore must show that his causation hypothesis has some basis in established fact and is more probable than any other hypothesis reflected by the evidence. *Id.* "The mere possibility that [the] [defects] may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two." *Id.* (emphasis added) (cit-

ing *Jordan v. Whiting Corp.*, 396 Mich. 145, 240 N.W.2d 468 (1976)). As explained by the Sixth Circuit Court of Appeals:

> Where the evidence indicates that it is as likely that the incident was caused by factors other than those asserted, a verdict for the defendant is mandated since otherwise a verdict would be based on speculation and conjecture.

*American & Foreign Ins. Co. v. General Electric Co.*, 45 F.3d 135, 140 (6th Cir.1995). The plaintiff, however, is not required to eliminate all possible causes of the accident. *Holloway v. General Motors Corp.*, 403 Mich. 614, 621, 271 N.W.2d 777 (1978) (on rehearing) *Compare Baker v. Sears, Roebuck and Co.*, No. 93–1084, 43 F.3d 1471, 1994 WL 702235 (6th Cir. Oct.20, 1994) (plaintiff could not remember and there were no witnesses to plaintiff's alleged fall down a flight of stairs in a department store; plaintiff attempted to use expert testimony that a design defect in the stairway caused plaintiff's fall; court affirmed district court's grant of summary judgment to defendant finding that

---

Dr. David L. Sikarskie, this impression weakens the spreader bars by causing a stress concentration in the area of the impression. In fact, the right spreader bar allegedly broke at the precise location of this impression. It is the opinion of the plaintiffs' expert that the "notch" can be easily rectified by die redesign (i.e., using a die that is rounded rather than a die that contains a sharp corner). (Sikarskie Dep. at 51).

4. Plaintiffs' expert opined that the ladder lacked rigidity and was "mushy" and that if the ladder was stiffer, the spreader bars would not have had to absorb as much load and the right spreader bar might not have broken. (Sikarskie Dep. at 40, Sikarskie Report). Plaintiffs expert further opined that torsional rigidity could be increased by double-riveting each step or by placing crossbars in the ladder.

5. Defendants contend that plaintiffs' *manufacturing defect* claim is actually a *design defect* claim because the alleged "notch" was not peculiar to the subject ladder, but rather was existent in each and every model A306 All American six-foot aluminum step ladder manufactured by Werner. (Sikarskie Dep. at 50–52). Defendants assert that the quintessential distinction between a design and manufacturing defect is that the former appears in <u>all</u> products whereas the latter appears in the product at issue in the lawsuit.

As a general rule, defendants are correct in their differentiation between design and manufacturing defects. Typically, manufacturing de-

fect cases involve subject products that differ from ostensibly identical units; the manufacturing defect manifests itself in the factory. In contrast, design defect cases involve flaws within the entire product line; the defects occur at the drawing board. *Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 689, 365 N.W.2d 176 (1984) (stating that "unlike manufacturing defects, design defects result from deliberate and documentable decisions on the part of manufacturers").

The alleged defect in this case seems to fall into both categories. On the one hand, the "notch" could be characterized as a manufacturing defect since the notch was placed in the spreader bar by a die in the factory and because the design drawings for this model of ladder do not provide for any such tooling mark, but rather provide for a smooth contour. On the other hand, the "notch" also could be classified as a design defect because it appears in all ladders of the subject model as a result of a conscious decision by the manufacturer to utilize the die which caused the "notch."

This court need not reach the thorny issue of whether the "notch" is a design or manufacturing defect. The classification of the "notch" as a design or manufacturing defect is immaterial to resolution of this case since the causation element for design and manufacturing defect claims is exactly the same and because plaintiff has not established this element.

the reliance upon the expert's testimony was insufficient to submit the case to the jury because there were no facts in evidence to support the expert's opinion and because the testimony only offered one possibility of the cause of plaintiff's fall) (attached hereto as Exhibit A) with *Estate of M. Triplett v. General Electric Co.*, 954 F.Supp. 149 (W.D.Mich.1996) (plaintiffs' products liability suit was based on the allegation that defendant's fluorescent light ballast caused a fire which resulted in the deaths of a woman and her two children; plaintiff's two experts opined that the fire was caused by the ballast overheating and ruled out electrical or heating malfunctions as possible causes of the fire; court found that the plaintiffs had submitted sufficient evidence from which the jury could conclude that the ballast caused the fire, and accordingly denied defendant's motion for summary judgement on the issue of causation).

In this instance, plaintiffs are attempting to establish causation solely through the opinion of their expert, Dr. David L. Sikarskie, a Professor of Engineering Mechanics at Michigan Technological University. The reason for this is that Salvatore does not know what precipitated his alleged plunge from the ladder. (S. Cavalier at 42). Also, there are also no eyewitnesses to the event.

■ In regard to Dr. Sikarskie's view as to how the accident occurred, this was revealed by him at his deposition and in a report. (*See* Sikarskie Dep. at 24–25 and Sikarskie Report of May 5, 1997 attached as Exhibit H to Plaintiffs' Response to Defendants' Motion for Summary Judgment). According to Dr. Sikarskie, Salvatore's work activity coupled with the low torsional rigidity of the ladder caused the left front[6] rail (a.k.a. foot) of the ladder to lift from the floor and rotate clockwise. This clockwise rotation, so Dr. Sikarskie asserts, exerted a strong torsional pulse on the front part of the ladder, a tensile force on the right spreader bar of the ladder and a compressive force on the left spreader bar of the same. Dr. Sikar-

skie determined that the tensile force on the right spreader bar caused it to bend around the edge of the rail section of the stair at the exact position of a weakened notch. Ultimately, so Dr. Sikarskie opined, the right spreader bar snapped, at which time Salvatore was attempting to regain his balance by rotating counter-clockwise and moving to the right side of the ladder. In Dr. Sikarskie's opinion, Salvatore eventually twisted 180 degrees counter-clockwise and then fell off of the ladder onto his rear. In sum, Dr. Sikarskie opined that Salvatore's fall and resulting injuries were directly attributable to the combined effect of a **design defect** (i.e., insufficient torsional rigidity of the ladder) and a **manufacturing defect** (i.e., low strength of the spreader bars due to the notches) in the Model A306 Mark 6, All American stepladder manufactured by defendant Werner.

In this court's opinion, Dr. Sikarskie's causation theory is insufficient evidence from which a reasonable juror could conclude that it is more likely than not that a design or manufacturing defect caused Salvatore's alleged fall and injuries. His causation theory is nothing more than pure speculation and is inconsistent with the incident as remembered by Salvatore himself.

This court finds Dr. Sikarskie's theory to be entirely speculative. Dr. Sikarskie formulates his opinion as to how the accident happened on nothing more than a guess. Dr. Sikarskie testified that some movement permitted the left front rail of the ladder to move, setting off the remaining chain of events which ultimately led to plaintiff's fall. Yet, Dr. Sikarskie conceded at his deposition that he does not know what event permitted the left front rail to move. He stated "there is a great deal in terms of the initiation of this [accident] that is, probably cannot, nor probably ever will be able to be pinned down completely." (Sikarskie Dep. at 24). In fact, Dr. Sikarskie's hypothesis as to how the accident ensued is in glaring disaccord with Salvatore's recollection of the accident.[7] Once again, Dr. Sikarskie opined that a lift in the

---

6. The front of the ladder is the side with the stairs.

7. At his deposition, the following colloquy transpired between defense counsel and Dr. Sikarskie:

Q. We can agree that if you stick to the four corners of what Mr. Cavalier testified to in his

left front leg of the ladder set off the chain of events leading to Salvatore's alleged fall from the ladder. (S. Cavalier Dep. at 41–42). Yet, Salvatore testified that he felt *no* movement in the ladder prior to his alleged fall. This direct contradiction between Salvatore's testimony and Dr. Sikarskie's report and testimony exposes the weakness in Dr. Sikarskie's theory of causation and bolsters this court's conclusion that such a theory is not substantial evidence from which a reasonable juror could conclude that a design and/or manufacturing defect was more likely than not the cause of Salvatore's alleged fall and resulting injuries. *Skinner*, 445 Mich. at 173, 516 N.W.2d 475 ("an expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury. [because] there must be facts in evidence to support the opinion testimony of an expert.' ") (citing *Mulholland v. D.E.C. Int'l. Corp.*, 432 Mich. 395, 411, 443 N.W.2d 340 (1989)).

Moreover, Dr. Sikarskie did not demonstrate by a reasonable probability that defects in the ladder were more probable than not the cause of the alleged fall. Other theories are equally plausible and the jury should not be allowed to conjecture that Salvatore fell from one cause or another. *Gorges v. George Worthington Co.*, No. 93239, slip. op. at 4 (Mich.App. June 14, 1988) (holding that "[p]laintiffs failed to show, even through circumstantial proof, a causal connection between the ladder and the fall, leaving only speculation and conjecture as to the element of causation") (attached hereto as Exhibit B). For instance, defendants' expert, Donald L. Gibson, Product Engineer for Werner, offered an equally possible explanation. In a letter dated May 19, 1997, Gibson opines as follows:

> Given the above information [plaintiff's answers to interrogatories, the depositions of Salvatore and Giuseppe Cavalier, John Lia, Dr. David L. Sikarskie, and David L. Gibson, a report by Dr. Sikarskie, as well as photographs of the subject ladder and color photocopies of the subject ladder and accident site] and my familiarity with ladder design, test methods, manufacturing methods, and quality assurance methods, I believe the accident was the result of Mr. Cavalier losing his balance causing the ladder to tip, which resulted in the plaintiff and the ladder falling to the floor. Once the ladder was lying on its side on the floor, Mr. Cavalier then contacted the ladder creating the aforementioned damage [bent left spreader, broken right spreader, bent left pail shelf arm, twist in the front section and racking in the rear section].

(*See also* Gibson Dep. Vol. II at 41–70). Because Gibson's offered scenario is just as probable as Dr. Sikarskie's scenario, plaintiff has not adduced sufficient evidence giving rise to a genuine issue of material fact on the element of causation.

In sum, this court finds that Salvatore has not proffered sufficient evidence which would permit a reasonable juror to find, by a preponderance of the evidence, that but for the alleged design and/or manufacturing defects in the ladder, Salvatore's injuries would not have occurred. Summary judgment must be granted to defendants on plaintiff's claim of design and manufacturing defect.[8]

### Failure to Warn

■ Plaintiff Salvatore Cavalier also alleges that the defendants were negligent in

---

deposition, there is nothing to suggest that one of the legs lifted up?

A. Yes. I am not buying that part of the testimony. That's exactly what I was telling you before. I am not sure that he fully understands all of the details prior to that accident. He has difficulty remembering, for example, precisely how he felt or how precisely he landed other than he simply turned through this 180 degrees.

\* \* \* \* \* \*

Q. If I understand you correctly, your opinion of how the accident sequence initiated requires you to assume Mr. Cavalier's testimony, that he felt no sensation of movement in the ladder before he fell, is not accurate?

A. I think, that's substantially correct. Yes. I don't believe that at the time of the accident, he fully remembers all of the details, the sequence of details that went into the initiation of this.

(Sikarskie Dep. at 38–39, 183–84).

8. Defendants assert that plaintiff cannot establish a *prima facie* case of design defect because he cannot present sufficient evidence concerning: (1) the magnitude of the risk involved with the allegedly defective design, including likelihood of occurrence of the type of accident and severity of injuries sustainable from such an accident and (2) a reasonable proposed alternative design. *See Gawenda v. Werner Co.*, 932 F.Supp. 183, 188

failing to warn that the ladder could collapse due to the manufacturing and design defects.[9] Since the evidence viewed in a light most favorable to the plaintiffs is insufficient to give rise to a genuine issue of material fact as to whether a manufacturing or design defect, or a combination of both, more likely than not caused Salvatore to fall off the ladder and hurt himself, plaintiff's claim of failure to warn of the defects and their accompanying hazards likewise fails.[10]

### Implied Warranty

■ Salvatore Cavalier also brings a claim of breach of implied warranty. To prevail on such a claim, he must prove:

(1) a defect attributable to the manufacturer; and

(2) a causal connection between the defect and the injury or damage alleged.

*Jones v. United Metal Recyclers,* 825 F.Supp. 1288, 1299 (W.D.Mich.1993) (citations omitted). As discussed *supra,* Salvatore has not demonstrated a genuine issue of causation and therefore, defendants are entitled to summary judgment on plaintiff's claim of breach of implied warranty.

### Express Warranty

Plaintiff Salvatore Cavalier also brings a claim of breach of express warranty. Under Michigan law, an express warranty is created by the seller as follows:

(1) An affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

(2) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Mich. Comp. Laws § 440.2313.

In the case at bar, the only express warranty defendants are alleged to have made was that the ladder was safe to hold a person of 200 pounds. Salvatore testified at his deposition that he did not rely on any newspaper advertisements to purchase the ladder, nor did he rely upon the grade of ladder. (S. Cavalier Dep. at 26, 28). Salvatore further testified that he does not recall any employee of Home Depot assisting him in selection of the ladder. (S. Cavalier Dep. at 26, 29).

■ With respect to how this alleged express warranty was breached, plaintiff asserts that the ladder was incapable of holding a 200 pound person. In fact, plaintiffs insist that the ladder was unsafe at *any weight,* even so much as a single pound.

---

(E.D.Mich.1996) (citing *Fisher v. Kawasaki Heavy Industries, Inc.,* 854 F.Supp. 467, 469 (E.D.Mich. 1994)), *Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 431–32, 326 N.W.2d 372 (1982), *Reeves v. Cincinnati, Inc.,* 176 Mich.App. 181, 187–88, 439 N.W.2d 326 (1989) and *Kinzie v. AMF Lawn & Garden Div. of AMF, Inc.,* 167 Mich.App. 528, 535–36, 423 N.W.2d 253 (1988). This court need not address this issue because the issue of causation is dispositive.

9. Michigan follows Section 388 of the Restatement (Second) of Torts, imposing liability on the supplier of a product which injures the user if: (1) the product is defective or dangerous, (2) the supplier has no reason to believe the user will realize its defective or dangerous condition, and (3) the supplier cannot reasonably rely on the purchaser/employer to warn the ultimate users of the product of the danger. *Tasca v. GTE Products Corp.,* 175 Mich.App. 617, 624, 438 N.W.2d 625 (1988).

10. Plaintiffs also have not shown that Salvatore would have altered his conduct had the purported warnings been given. *Mowery v. Crittenton Hospital,* 155 Mich.App. 711, 722, 400 N.W.2d 633 (1986) (holding that a plaintiff proceeding under a theory of liability based on negligent failure to warn must show that an adequate warning would have prevented the injury by altering the conduct involved).

This court need not reach the issue of whether the open and obvious doctrine precludes defendants from liability on plaintiffs' failure to warn and design defect claims. Put simply, the open and obvious doctrine provides that there is no duty to warn or protect persons from dangerous characteristics of a simple product that are readily apparent or easily discoverable upon casual inspection by the average user of ordinary intelligence. *Kirk v. Hanes Corp. of North Carolina,* 16 F.3d 705, 710 (6th Cir.1994); *Landberg v. Ricoh Intern., A Div. of Ricoh Co., Ltd.,* 892 F.Supp. 938, 943 (E.D.Mich.1995); *Glittenberg v. Doughboy Recreational Industries et al.,* 441 Mich. 379, 396, 491 N.W.2d 208 (1992).

Assuming that defendants' representations that the ladder was safe at 200 pounds constituted an express warranty, plaintiff has not introduced any evidence tending to show that the ladder was unfit to bear such a weight.[11] Consequently, summary judgment must be granted to defendants on plaintiff's claim of breach of express warranty.

### Loss of Consortium

As set forth above, defendants are entitled to summary judgment on all Salvatore Cavalier's claims. Accordingly, Laura Cavalier's loss of consortium claim fails. *Long v. Chelsea Comm. Hosp.*, 219 Mich.App. 578, 589, 557 N.W.2d 157 (1996); *Moss v. Pacquing*, 183 Mich.App. 574, 583, 455 N.W.2d 339 (1990).

For all the foregoing reasons, this court grants defendants' motion for summary judgment.

### EXHIBIT A

NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

Rebecca BAKER, a legally incapacitated person, by William J. BAKER, Jr., Guardian, and William J. Baker, Sr., Plaintiffs–Appellants,

v.

SEARS, ROEBUCK AND COMPANY, Defendant–Appellee.

No. 93–1084.

United States Court of Appeals, Sixth Circuit.

Oct. 20, 1994.

On Appeal from the United States District Court for the Eastern District of Michigan.

E.D.Mich.

AFFIRMED.

Before: KEITH, NORRIS and BATCHELDER, Circuit Judges.

### OPINION

ALAN E. NORRIS, Circuit Judge.

* *1 Plaintiffs Rebecca Baker ("Baker") and her husband, William J. Baker, Sr., appeal from an order of the district court granting summary judgment to defendant, Sears, Roebuck and Company, on various claims filed as a result of personal injuries suffered by Baker when she fell down a staircase at defendant's store. We affirm.

Within minutes of the store's opening on the morning of January 5, 1991, Baker, then forty-two years of age, and a friend, Nancy Craig, entered and travelled by escalator to the second floor in order to make a payment on Craig's account. That was accomplished quickly, and the two women decided to use the stairs to return to the first floor. The stairway consisted of two flights of stairs separated by a landing approximately midway between the floors.

Craig was concerned that the stairs would be wet because it had been snowing that morning. Approaching the stairs, she noticed water on the steps and warned Baker of its presence. After advising Baker to be careful, Craig proceeded down the stairs, "one step at a time," with Baker following. The two made it down the first flight of stairs but, after beginning down the second flight, Baker fell and tumbled down the stairs past Craig, who did not see what caused Baker to fall. She sustained a head injury and can remember nothing of the incident.

Baker filed suit against Sears in state court alleging numerous tort theories. De-

---

**11.** Moreover, an essential element of a breach of express warranty cause of action is causation. *See* Mich. S.J.I. 25.12 (plaintiff has the burden of proving that the defect was the proximate cause of the injuries under an express warranty theory). In this instance, plaintiffs have not adduced sufficient evidence to establish this element, and thus plaintiff's express warranty claim fails.

fendant removed the suit on diversity grounds, and moved for summary judgment. The district court concluded that Baker had pleaded three different theories of negligence: defective design of the staircase (dangerous pitch and slippery materials); negligent maintenance of the staircase (allowing water to remain); and failure to warn of defective and hazardous conditions. While defendant argued that the existence of water on the staircase was an open and obvious danger, the district court found it unnecessary to address this issue due to Baker's failure to produce any evidence that defendant had notice of the existence of water on the stairs. See *Oppenheim v. Pitcairn*, 293 Mich. 475, 477, 292 N.W. 374 (1940) (charge of negligent failure to maintain premises in reasonably safe condition requires proof that unsafe condition was known to the one on whom the duty rested, or that the character of the danger such that reasonably prudent incumbent should have knowledge).

In its motion for summary judgment, defendant argued that there was an absence of notice, but Baker failed to respond. Indeed, the only summary judgment evidence going to notice was provided by defendant, and it supported the contention that there was no such notice.[1] Therefore, the court granted summary judgment to defendant on Baker's negligence and failure to warn claims insofar as they involved the existence of water on the staircase.

The district court also granted summary judgment on Baker's defective design and the related failure to warn claims. As defendant noted, Baker's position seemed to shift here to a theory that if she did not slip on a wet step, then she must have slipped on a defectively designed dry one. Defendant maintained that Baker had failed to offer any evidence concerning how she fell and was, therefore, unable to prove that the design of the staircase was the proximate cause of her injuries.[2] Since Baker could remember nothing about the fall, and Craig did not witness the fall, Baker's counsel conceded that "[t]here is no way to verify what plaintiff saw or actually slipped on." In view of this predicament, Baker's counsel sought to use the testimony of an expert witness to establish the existence of a defect in the design of the stairway, and then pointed to the possibility that the defect caused her fall.

* *2 Baker's reliance upon the expert's testimony is misplaced for several reasons. First, "expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury ... [because] 'there must be facts in evidence to support the opinion testimony of an expert.'" *Skinner v. Square D Co.*, 445 Mich. 153, 173, 516 N.W.2d 475 (1994) (citations omitted)

Second, while it is possible that the condition of the staircase cited by Baker's expert as being defective could have caused the fall, by the same token, there are other possibilities. For example, it is possible that Baker merely stumbled, or, as she previously alleged, that she slipped on water on the staircase. Courts deal in probabilities, not possibilities. A plaintiff's proof "must facilitate reasonable inferences of causation, not mere speculation." Id. at 164, 516 N.W.2d 475. When more than one possible explanation for an accident exists, a plaintiff must present facts from which a jury could infer that one theory is more likely than not the actual cause in fact. Id.

Baker's counsel also attempted to avoid summary judgment by asserting that Baker's sister "will testify that [Baker] told her ... that she slipped while stepping on a dry area of the step." The court properly rejected this proffer of testimony as insufficient to defeat a properly supported motion for summary judgment because it "failed to go beyond the pleadings," and was inadmissible hearsay. Other than this proffer, Baker has provided no evidence to show that the alleged defect caused the fall.[3] Accordingly, because "causation theories that are mere possibilities or, at most, equally as probable as other theories do not justify denying defendant's motion for summary judgment," id. at 172–73, 516 N.W.2d 475, the district court properly granted summary judgment.

The district court's orders granting summary judgment to defendant on all claims are affirmed.

1. Defendant presented the deposition testimony of one of its employees that he had used the stairs ten or fifteen minutes before the accident, and inspected them about two minutes before the accident, and that at neither time did he see water on the stairs.

2. Defendant conceded, for the purposes of this argument, the issues of duty, breach, and damages.

3. Baker also attempted to rely upon a presumption found in Michigan law, as stated in a Michigan jury instruction, which permits a jury to presume that a plaintiff who has no recall of her accident was not contributorily negligent. Mich. SJI2d 10.09. However, the district court properly rejected this argument as insufficient to defeat defendant's motion. A presumption that Baker was not negligent does not tend to prove that the alleged defect was more likely than not the cause of the fall, since other causal possibilities remain.

## EXHIBIT B

Richard W. GORGES and Cynthia Gorges, Plaintiffs–Appellants,

v.

GEORGE WORTHINGTON COMPANY, a Michigan corporation, Erick Kuhneun, individually and d/b/a Lutz Troy True Value Hardware and R.D. Werner Company, a/k/a The Werner Company, an Illinois corporation, Defendants–Appellees.

BEFORE: M.H. Wahls, P.J., Sawyer and C.W. Simon, Jr.*, JJ.

PER CURIAM

In this products liability action, plaintiffs' appeal by right from a directed verdict granted in favor of defendants, We affirm.

Richard Gorges (plaintiff) and his wife commenced this action as a result of injuries plaintiff sustained when he fell from a stepladder in January, 1981. The ladder was manufactured by defendant Werner Company, distributed by defendant George Worthington Company, and sold to plaintiff by defendant Lutz Troy True Value Hardware.

At trial, plaintiff testified that he used the ladder about fifty times before the accident, and there was no damage to the ladder prior to that time. On the day of the accident, he was standing on the second or third step of the ladder, with him arms extended overhead, attempting to measure the width of a ceiling opening in his garage with a tape measure. Suddenly, plaintiff realized that the ladder was no longer beneath him and that he was falling. The next thing he remembered was lying on the concrete floor and realizing that his right arm was extremely painful. The ladder was on its left side on the floor of the garage. It was not disputed that the left side of the ladder was damaged after the accident.

The other proofs presented by plaintiffs consisted of plaintiffs' and defendants' expert witnesses, both of whom had read plaintiff's deposition testimony as a basis for formulating an opinion on the cause of plaintiff's accident. In his deposition, plaintiff agreed that the reason for his sudden fall was unknown.

Defendants' expert, who testified as an adverse witness, opined that the damage to the side rail of the ladder was caused by plaintiff falling on the ladder. He had only seen such damage when a force impacted against the ladder, and had never seen it result from any type of movement of the ladder.

By contrast, plaintiffs' expert opined that plaintiff either shifted his weight quickly or tried to recapture himself after losing his balance on the ladder, thereby causing the ladder to twist and then tip or lean to the left, Plaintiffs' expert theorized that this put an excessive load on the left side rail, causing it to bend and twist and ultimately fall out from underneath plaintiff. Plaintiffs' expert concluded that something caused the ladder to "rack over to the left and get into a mode where it was ready to tip causing that side rail on the bottom to buckle." He agreed, however, that the side of the ladder could have been bent by someone falling on it.

At the close of plaintiffs' proofs, the trial court granted defendants' motion for a di-

---

* Circuit Judge, sitting on the Court of Appeals by Assignment.

rected verdict because plaintiffs did not establish a prima facie case. On appeal, plaintiffs contend that directed verdict was improper because they submitted evidence showing that a defective design in the ladder caused plaintiff's injuries. We disagree.

In deciding whether or not to grant a motion for directed verdict, the trial judge must view the evidence and all legitimate inferences that may be drawn from the evidence in a light most favorable to the nonmoving party. *Caldwell v. Fox*, 394 Mich. 401, 407, 231 N.W.2d 46 (1975). A directed verdict is improper if the evidence, when viewed in this manner, establishes a prima facie case. *Id.*, p. 407, 231 N.W.2d 46; *Clery v. Sherwood*, 151 Mich.App. 55, 63–64, 390 N.W.2d 682 (1986). If there are material questions of fact upon which reasonable minds might differ, these are to be resolved by the jury. *Taylor v. Wyeth Laboratories, Inc.*, 139 Mich.App. 389, 394–395, 362 N.W.2d 293 (1984), lv den 423 Mich. 852 (1985).

To avoid a directed verdict in a products liability action, a plaintiff "must produce evidence reasonably leading to the conclusion that the defendant supplied a product which is defective and that this defeat caused the plaintiff's injury." *Central Soya Co. v. Rose*, 135 Mich.App. 180, 183, 352 N.W.2d 727 (1984). The exact nature of the alleged defect need not be shown. All that is required is direct or circumstantial evidence which creates a reasonable probability that the defect is attributable to the manufacturer or seller. Where two or more equally plausible causes for the injury have been established, however, directed verdicts are proper. In such a case, the jury's selection of one of the causes would be based upon conjecture, rather than upon reasonable inferences. *Id.*, p. 183, 352 N.W.2d 727. *Chambers v. General Motors Corp.*, 123 Mich.App. 619, 621, 333 N.W.2d 9 (1982).

Plaintiffs rely on *Holloway v. General Motors Corp. (On Reh)*, 403 Mich. 614, 271 N.W.2d 777 (1978), to support their claim that the directed verdict was improper. The *Holloway* Court stated that a plaintiff sustains his burden of proof when he establishes a reasonable probability that the products

defect is attributable to the manufacturer. *Id.*, p. 621, 271 N.W.2d 777. "Questions of comparative probability are to be resolved by the trier of fact." *Id.*, p. 622, 271 N.W.2d 777.

The *Holloway* Court quoted the following language from *Schedlbauer v. Chris–Craft Corp.*, 381 Mich. 217, 230–231, 160 N.W.2d 889 (1968), which is also relied on by plaintiffs:

"'It is true that where an injury occurs that cannot be accounted for and where the occasion of it rests wholly in conjecture, the case may fail for want of proof. * * * But such cases are rare, and that rule should never be so extended as to result in a failure of justice, or in denying an injured person a right of action where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than upon the other. * * * *[T]he question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury.'* [Emphasis supplied.]" *Holloway, supra*, 622, 271 N.W.2d 777.

In plaintiffs' view, the trial judge in this case invaded the province of the jury by selecting between the parties' competing theories and directing a verdict in favor of defendants. We disagree.

Although questions of comparative probability are for the jury to resolve, reasonable minds would agree that there was an essential failure of proof in plaintiffs' case. *Central Soya Co, supra*, 183, 352 N.W.2d 727. Plaintiffs' expert theorized that plaintiff Richard Gorges moved on the ladder and caused an excessive load to be placed on an insufficiently supported lower left rail. Plaintiff's own testimony, however, did not support this version of the facts. Plaintiffs failed to show, even through circumstantial proof, a causal connection between the ladder and the fall, leaving only speculation and conjecture as to the element of causation. Therefore, the trial judge did not err in granting defendants' motion for directed verdict.

Since a directed verdict was properly granted, we need not address the evidentiary

issue raised by plaintiffs pertaining to the element of duty.

AFFIRMED.

### *ORDER*

**IT IS HEREBY ORDERED** that WERNER COMPANY and HOME DEPOT, U.S.A., INC.'s motion for summary judgment is GRANTED and this case is dismissed with prejudice.

**SO ORDERED.**

### *JUDGMENT*

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered.

**IT IS ORDERED AND ADJUDGED** that the case be dismissed with prejudice.

It is further **ORDERED** that the clerk serve a copy of the judgment by United States mail on the counsel for plaintiff and on counsel for defendant.